**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

CARL WILKINSON for Irvin Wilkinson with Power of Attorney, **JOHN McGILL**, **RONDA GRAY, LHISA WARSAW, JONATHAN M. ELLISON, HEYWOOD BALLARD, REYFORD FRYE, MARIO MORENO, CAROLYN RICHARDSON-HEART, MARVIN ASKER, MARVIN ASKER** personal representative for the Estate of GEORGETTE KORI, deceased, and all the unknown claimants and owners, and all the heirs, devisees or assigns of the claimants and owners and all the heirs, devisees and assignees of Georgette Kori (deceased), all or any of whom may have or had an interest in the foreclosed property or the subject matter of this action, **CHRISTOPHER BOYD, WENDY WRIGHT, KEYCIA WRIGHT, CAMILLA BOWMAN-PORTER, BRANDON KLECKLEY, REGINALD COLLINS, SIMPLY CONSTRUCTION EXCAVATING, DEMETRIA DAVIS, ALLYSA HAYES, SILVER CAPITAL GROUP, SHEILA MAXWELL, BOBBY WILLIAMSON**, personal representative for the Estate of ALMA WILLIAMSON, deceased, and all the unknown claimants and owners, and all the heirs, devisees or assigns of the claimants and owners and all the heirs, devisees and assignees of Alma Williamson (deceased), all or any of whom may have or had an interest in the foreclosed property or the subject matter of this action, **DELLA**

Case No. _____

Hon. _____

**Magistrate Judge**
_____

**JURY DEMANDED**

**HAGWOOD, DR. FESSEHA TEWODROS, EAH PROPERTY MANAGEMENT LLC, ROLAND PORTER, JAMES HOLLEY, FREDERICKA HOLLY, KEYCIA POPE** personal representative for the Estate of Serenus Pope, deceased, and all the unknown claimants and owners, and all the heirs, devisees or assigns of the claimants and owners and all the heirs, devisees and assignees of Serenus Pope (deceased), all or any of whom may have or had an interest in the foreclosed property or the subject matter of this action, **ANTHONY MOTTLEY, ADENLKE IJLWAYE, RENEE HASSAN, SARAH DELEON, MICHAEL GRAVES, DAVID McELMURRY, SFS TAX SERVICE,** and **SODORE, LLC**,

                    Plaintiffs,

v.

**COUNTY OF OAKLAND, ANDREW MEISNER** (in his personal and official capacity)**, CITY OF SOUTHFIELD, SOUTHFIELD NEIGHBORHOOD REVITALIZATION INITIATIVE LLC, FREDERICK ZORN** (in his personal and official capacity), **KENSON J. SIVER** (in his personal and official capacity), and **SOUTHFIELD NON-PROFIT HOUSING CORPORATION,**

                    Defendants.

_____/

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

-2-

## COMPLAINT

Plaintiffs, Carl Wilkson with Power of Attorney for Irvin Wilkinson, John McGill, Ronda Gray, Lhisa Warsaw, Jonathan M. Ellison, Heywood Ballard, Reyford Frye, Mario Moreno, Carolyn Richardson-Heart, Marvin Asker, Marvin Asker as Personal Representative for the Estate of Georgette Kory, Christopher Boyd, Wendy Wright, Keycia Wright, Camilla Bowman-Porter, Brandon Kleckley, Reginald Collins, Simply Construction Excavating, Lamar Grace Demetria Davis, Allysa Hayes, Silver Capital Group, Howard Sterling, Sheila Maxwell, Bobby Williamson as Personal Representative of Alma Williamson, Della Hagwood, Dr. Fesseha Tewodros, EAH Property Management LLC, Roland Porter, James Holley, Fredericka Holly, Keycia Pope Personal Representative For The Estate Of Serenus Pope, Anthony Mottley,  Adenlke Ijlwaye, Renee Hassan, Sarah DeLeon, Michael Graves, David McElmurry, SFS Tax Services, and Curtis Henderson, Sodore, LLC, by and through counsel, and for their Complaint, states as follows:

## INTRODUCTION

1.     This is a case of governmental abuse that cries out for a remedy, especially in light of *Tyler v. Hennepin Cnty.,* 598 U.S. 631; 143 S. Ct. 1369 (2023).

2.     Defendants' conduct caused the deprivation of Plaintiffs' valuable property rights consisting of equity in real property without just compensation.

3. This abuse stems from the Defendants' property tax foreclosure process. Michigan law generally authorizes counties to foreclose private property whose owners have failed to pay all property taxes. Those properties may be sold at auction, and the proceeds are used to make municipalities whole for unpaid taxes, as well as reasonable fees and expenses. The current and prior versions of the General Property Tax Act provides for a right of refusal by governmental entities. *See*, Mich. Comp. Laws § 211.78m(1).

4. The instant case seeks to enforce fundamental rights under the Michigan Constitution Article X §2, and the deprivation of Plaintiffs' "surplus equity" and "just compensation" in their properties under the Fifth Amendment of the United States Constitution and their right to due process under the Fourteenth Amendment of the United States Constitution as enforced under 42 U.S.C. § 1983.

5. Furthermore, Plaintiffs' respective properties had significant equity (*i.e.*, they were worth much more than the amount owed for unpaid taxes, plus reasonable fees and expenses.) This "Surplus Equity" was not refunded to Plaintiffs. Plaintiffs were permanently deprived of their Surplus Equity without any compensation.

6. Plaintiffs all fell behind in paying their property taxes on their residences. Their respective properties were all forfeited and then foreclosed upon, sometimes without constitutionally sufficient notice.

7.      "The act of taking is the event which gives rise to the claim for compensation." *Knick v. Twp. of Scott*, 588 U.S. 180, 139 S. Ct. 2162 (2019).

8.      Under Michigan law, the taking claim accrues at the time of the event following the entry of the judgment of foreclosure when the government fails to provide the divested property owner with the opportunity to retain the "surplus equity" which is the value of the property interest that survived foreclosure. *Jackson v Southfield Neighborhood Revitalization Initiative*, 2025 Mich LEXIS 1287, *11 (Welch, J., concurring).

9.      Under Michigan law, the Plaintiffs' claims accrue at the event that generates surplus value that is wrongfully retained by the governmental entities. In the present case that is synonymous with the date the properties were transferred to the City of Southfield.

10.     The Surplus Equity (the amount over the amount of taxes due, interest and reasonable fees) must be returned to the taxpayer. *Tyler, supra*.

11.     Landowners may seek the difference between the fair market value of their homes and the taxes they owe, whether or not the treasurer obtained surplus proceeds at a foreclosure sale. *Hall v. Meisner* 51 F4th 185 (CA 6, 2022).

12.      Centuries old principles require that landowners have a property interest in their "equitable title." *Fox v. Saginaw County*, 67 F4th 284, 290 (2023).

13.     The Michigan Supreme Court in *Rafaeli v Oakland County*, 505 Mich 429, 952 N.W.2d 434 (2020), held the that a treasurer's failure to return the surplus to the landowner was a violation of the Michigan State Constitution's "takings clause." In accord, *Jackson v. Southfield Neighborhood Revitalization Initiative*, __ N.W.3d __ (2023 WL 6164992) (Mich. Ct. App. Sept. 21, 2023).

14.     *Tyler, supra*, and *Hall, supra*, read together stand for the principle that the takings clause of the United States Constitution protects equitable interests in real property when obtained in property tax foreclosure.

15.     On December 22, 2020, Michigan signed amendments to its tax foreclosure scheme into law, which established varying procedures depending on whether the treasurer transferred or sold property before or after the *Rafaeli* decision of July 17, 2020. *See,* Mich. Comp. Laws § 211.78t(b).

16.     The amendments to the tax act were based on *Rafaeli* and the now-unconstitutional notion that the prior landowners were limited solely by the difference between auction value and the amount owed, not the former owner's equity. *See Hall*, 51 F.4th at 192.

17.     Defendants' actions constitute the improper and unconstitutional taking of Plaintiffs' property without just compensation.

18.     To the extent Defendants' actions were permitted under the previous or current version of Mich. Comp. Laws § 211.78m(8) or § 211.78(t)(2), those provisions are unconstitutional.

14.     As set forth below, Defendants' actions constitute an impermissible inverse condemnation under Michigan law. Plaintiffs also seek a declaratory judgment and injunctive relief against Defendants for their unlawful actions.

## PARTIES

15.     Defendant County of Oakland ("Oakland") is a legal entity formed and existing under the laws of the State of Michigan and is controlled and/or operated by duly designated Boards of Commissioners. It is a political subdivision of the State of Michigan which is delegated the responsibility to collect delinquent property taxes. Unless otherwise stated, Oakland acted through the Oakland County Treasurer.

16.     Defendant City of Southfield is a municipal entity formed under the laws of the State of Michigan. It is a political subdivision of Oakland County and is designated to collect property taxes.

17.     Defendant Andrew Meisner ("Meisner") was at all relevant times the Treasurer of Oakland County.

18.     Southfield Non-Profit Housing Corporation ("SNPHC") is a 501(c)(3) non-profit corporation organized under the rules of the IRS and incorporated in the

-7-

State of Michigan.

19.     Defendant Southfield Neighborhood Revitalization Initiative ("SNRI") is a for profit limited liability company formed under the law of the State of Michigan. SNRI was organized on June 24, 2016.

20.     Defendant Frederick E. Zorn ("Zorn") at all relevant times was the City Administrator for the City of Southfield as well as simultaneously serving as a board member and Manager of SNPH and SNRI, respectively.

21.     Defendant Kenson J. Siver ("Siver"), at all relevant times, was the Mayor of Southfield, as well as simultaneously serving as a board member and manager of SNPH and SNRI, respectively.

## JURISDICTION AND VENUE

22.     This is a civil action brought seeking unpaid "just compensation" and other monetary damages against Defendants for violations of the Fifth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

23.     This Court has jurisdiction under 28 U.S.C. § 1331, which authorizes federal courts to decide cases considering federal questions; 28 U.S.C. § 1343, which authorizes federal courts to hear civil rights cases; 28 U.S.C. § 2201, which authorizes declaratory judgments via the Declaratory Judgment Act; and 28 USC § 1367, which authorizes supplemental state law claims.

24.     Venue is proper in this Court as Defendants, individually and collectively, conduct or have conducted their business in Oakland County, Michigan and /or the Eastern District of Michigan.

## GENERAL ALLEGATIONS

**FORFEITURE AND FORECLOSURE UNDER THE GENERAL PROPERTY TAX ACT**

25.     This case stems from the administration of Michigan's General Property Tax Act ("GPTA"), Mich. Comp. Laws §§ 211.1-211.157, which is the statutory process enacted for the collection of unpaid and delinquent real property taxes through real property forfeiture and foreclosure.

26.     As used in this Complaint:

a.      "Tax Delinquency" means the past due tax owed on a property plus any additional interest, fees, penalties, and costs; and

b.      "Equity" means the amount by which a property's value exceeds its Tax Delinquency.

27.     The matters at the heart of this litigation concern matters after the taxation and forfeiture process is completed, and Equity remains after counties such as Oakland are paid in full for all delinquent taxes, interest, penalties, and fees.

28.     The GPTA permits the recovery of unpaid real-property taxes, penalties, interest, and fees through foreclosure and sale of the property on which there is a Tax Delinquency.

29.     In so doing, a county treasurer may choose to act as the collection agent for the municipality where the property is located when taxpayers become

delinquent on their property taxes or, at the election of the county, the State itself may act as the collection agent. Mich. Comp. Laws § 211.78(8).

30.     Oakland opted to act as the collection agent for Southfield, also known as the Foreclosing Governmental Unit ("FGU"), pursuant to Mich. Comp. Laws § 211.78(8).

31.     The GPTA requires a county to take certain enumerated steps to collect delinquent property taxes and initiate foreclosure proceedings. After notice and hearings, tax-delinquent properties are forfeited to the county. The tax-delinquent properties are then foreclosed after a judicial foreclosure hearing by the Circuit Court, and title to the forfeited property is transferred to the county treasurer. If the property is not timely redeemed by March 31 (or 10-days after judgment in a contested case), the foreclosure, fee simple title is vested absolutely in the county treasurer, without any further redemption rights available to the delinquent taxpayer. Mich. Comp. Laws § 211.78 et seq.

32.     Prior to 2021, once title was vested in the county treasurer, the property could be disposed of in two ways as follows:

(1) The state or municipality where the property is located has the right to claim the property in exchange for the payment to the county of unpaid taxes, interest, and other costs (the "minimum bid"); These transfers are   known as right of first refusal cases ("Right of First Refusal"); or

(2) If the state or municipality does not exercise their Right of First Refusal, the property is put up for sale at a public auction the July after foreclosure

and, if not sold, again in October. These cases are referred to as public auction or excess proceeds cases. Mich. Comp. Laws § 211.78m.

33.     In the public auction cases, Oakland, through its treasurer, administered a foreclosure process, such that in almost all cases, after foreclosed real property was sold at public auction for more than the Tax Delinquency, the treasurer retained the entire amount of the excess proceeds, or the Surplus Equity. The sales of foreclosed properties producing excess proceeds are often referred to as Surplus Equity cases. For example, a foreclosed home worth $150,000 sells at public auction for $75,000 and the outstanding Tax Delinquency is $3,000. The Surplus Equity is $72,000. At no point prior to 2024 did Oakland, or anybody with the power to do so, return the Surplus Equity or otherwise provide just compensation to the former property owners whose Surplus Equity was taken.

34.     In the Right of First Refusal cases, Oakland, through its treasurer, administered a foreclosure process, such that in almost all cases, after the property was foreclosed, Oakland exchanged the property with the municipality for the Tax Delinquency ( and sometimes inexplicably for less than the Tax Delinquency or Minimum Bid) and the municipality kept the property or later resold it to a third party at a profit. In all such cases, the foreclosed property owner never received anything. The municipality kept the Surplus Equity. The Surplus Equity is the *fair market value* of the property at the time of the transfer to the municipality less the Tax Delinquency. For example, a foreclosed home with a fair market value of

$150,000 is transferred to the city for $3,000 (Tax Delinquency). The Surplus Equity is $147,000.

35.     For any given foreclosed property, if the municipality elects the Right of First Refusal route instead of letting the property go to public auction, the foreclosed homeowner will suffer a much greater loss and the municipality will gain a much greater windfall; this results because the foreclosed property almost always sells for less than fair market value at a tax sale/public auction.

36.     Fair market value is defined as between a willing buyer and willing seller, both under no constraint to buy or sell and each with full knowledge of the property faults and weaknesses. Buyers at tax sales/public auctions almost always underbid the property because the Seller (County) is under a constraint to sell the property and the Buyer has no knowledge of the property and often has no way or time to investigate (inspect) the property's faults. The two examples above for calculating Surplus Equity are for the same house and result in a difference of lost Equity of $75,000, depending on which option the municipality chooses. The City of Southfield chose Right of First Refusal for almost all of its foreclosed homes between 2015- 2019.

37.     Plaintiffs all fell behind in paying their property taxes. Their properties were all forfeited and then foreclosed. They were then deprived of their Surplus Equity by Defendants, who all participated in a scheme whereby Oakland County

transferred the foreclosed and unencumbered properties to the City of Southfield, which in turn transferred them to private entities for $1.00, thus depriving Plaintiffs of their entire Surplus Equity. The primary purpose of the private entities—controlled by the same municipal officials that acquired the properties for the municipality—was to sell these properties for a significant profit.

38.     Oakland County, City of Southfield, Zorn, Siver, Meisner SNPHC and SNRI were all acting under color of state law when they violated Defendants' Constitutional rights to not have their property taken "without just compensation" and to have "due process" under the 5th and 14th amendment and the Michigan Constitution.

39.     Defendants were all acting under color of state law when they acted in concert to exercise the Right of First Refusal and tendered over $1,000,000 for over $10,000,000 in Real Estate.

40.     Under Michigan law, the City of Southfield and its affiliates have benefited and are liable for the unconstitutional taking. See *Jackson v. SNRI, supra*. (Concurrence J. Welch, July 16 ,2025).

41.     The statute of limitations has been tolled by the class action nature of this case from January 3, 2018, until 30 days after the denial of the Motion for class certification.

42.     Defendants were all aware of the constitutional violations as *Rafaeli*, *supra*, the seminal case as to unconstitutional taking regarding tax foreclosures was filed in 2014.

43.     Defendants acted with deliberate indifference toward Plaintiffs' Constitutional rights.

### THE CONSPIRACY TO DEPRIVE PLAINTIFFS OF THEIR EQUITY

44.     Oakland County, Meisner, Southfield, SNRI, SNPHC, Zorn, and Siver recognized that they could utilize the statutory right of first refusal to take ownership of real property that had substantial Equity beyond any unpaid taxes, sell that property, and retain Surplus Equity that rightfully belonged to homeowners. They did so to enrich themselves, under the pretext of curing Southfield's alleged problems of blight and a high percentage of rental properties.

45.     To further the pretext, they would publicly state that a non-profit corporation would advance the money to acquire the properties, rehabilitate those properties, and then sell them to single-family purchasers. However, they did not initially disclose that a for-profit company would acquire title, many of which were already owned by single-family purchasers, or that these companies were under the control of the government officials proposing the program.

46.     On February 22, 2016, committee meeting, a program between Southfield and SNPHC was proposed to acquire tax-foreclosed properties from the Oakland County Treasurer's Office.

47.     City Council members—including Zorn and Siver—stated to the public that the purpose of this program was to rid Southfield of rental properties and the resulting "blight" from the failure of renters and rental owners to maintain the properties. This was a pretext, however, as the real purpose was to strip Surplus Equity from the properties for monetary gain.

48.     But these Defendants did not wish to obtain just any foreclosed properties and certainly did not want to bid on those properties at a public auction. So, the program would facilitate the exercise by Southfield of its "right of first refusal" on foreclosed properties—including Plaintiffs' properties that had been foreclosed and to which Oakland had taken title. By exercising this right, the foreclosed properties could be acquired at much lower prices than their actual value.

49.     Southfield and SNPHC evaluated each foreclosed property carefully, with information provided by Oakland. They targeted properties with no mortgages and high values relative to the amount of taxes owed.

50.     SNPHC agreed to provide $1,000,000.00 to Southfield to help facilitate these acquisitions and pay the "minimum bid" required for Southfield to exercise its first right of refusal.

51.     Zorn submitted for approval the agreement between Southfield and SNPHC before City Council on June 20, 2016. There, the City Council authorized Siver and the City Clerk to execute the agreement on behalf of Southfield.

52.     The City Council meeting minutes never disclosed, at least initially, the involvement of a for-profit company. During June 20, 2016, Regular Meeting of the City Council, Southfield, represented that SNPHC would be acquiring the tax-foreclosed properties.

53.     The properties were transferred to SNRI for $1.00. SNRI is a for-profit company operated in large part by Zorn and Siver.

54.     SNRI was organized as a for-profit corporation for the purpose of purchasing tax foreclosed and other properties, purportedly improving such properties, and then selling those properties for fair-market value, earning a profit on the sale.

55.     SNRI's sole member is SNPHC.

56.     Zorn and Siver are elected or appointed officials of Southfield and simultaneously served as board members and/or managers of SNPHC and/or SNRI at all relevant times.

57.     Southfield employees worked on this program for SNPHC and/or SNRI, and Southfield was compensated by SNRI for that work.

58.    The Court of Appeals in this case found the conduct of Zorn, Siver and SNRI and SNPHC unethical and a violation of public trust.

59.    Indeed, SNRI did not have any employees of its own; it strictly used Southfield employees and then reimbursed the city for the wages.

60.    Once Southfield exercised its constitutional right of first refusal and obtained title to the subject properties—using monies provided by SNPHC—Southfield would sell those properties to SNRI for the sum of $1.00 (one dollar).

61.    SNRI—after flipping the property—would then sell the property to a third-party purchaser at fair market value (or as close as it could get), which was tens or even hundreds of thousands of dollars more than the amount of unpaid taxes and expenses which were originally owed on the property.

62.    This series of transfers would allow the Surplus Equity to be stripped away from the homeowner to SNRI.

63.    Because of this scheme, there was never any auction for properties purchased by Southfield, paid for by SNPHC, and transferred to SNRI. The prior owners were never able to generate Surplus Equity at auction, amounts which would belong to them under *Rafaeli, LLC v. Oakland County*, 505 Mich. 429, 470, 952 N.W.2d 434 (2020).

64.    Some City Council members openly questioned the propriety of this program. For example, at the Regular Meeting (held as a committee-of-the-whole)

on June 26, 2017, one councilman questioned whether the program was to benefit Southfield and questioned why Southfield was even involved. The answer was simple—the City Attorney brazenly stated that Southfield has the statutory right to purchase these homes from the County before auction; neither SNPHC nor SNRI have that authority and thus would have to bid for all the properties it desired. Thus, it was necessary to use Southfield's status as a governmental entity to effectuate the equity-stripping scheme.

65. Those skeptical City Council members were right to question the program. The stated objective of this program, removal of blight and the reduction of the number of rental properties—was a pretext. Most of the subject properties, including those of Plaintiffs, were not blighted, and most were owner-occupied housing rather than rentals.

66. Zorn, one of the architects of the program, has admitted that he was not aware of whether the properties targeted by the program were blighted or were rental properties, even though the program was ostensibly created to target those two types of homes.

67. When SNRI could not quickly sell a home obtained under the program for a profit, it has listed the property for rent, thus turning an owner-occupied home into a rental, in direct contravention of the alleged goals of the program. This further

proves that the program was a sham, and its real goal was to strip equity from paid-off homes.

68. Upon information and belief, Southfield has agreed to indemnify Oakland County for any losses sustained by this and other lawsuits.

**THE CONDUCT AT ISSUE HEREIN REFLECTS COUNTY AND CITY POLICY**

69. The actions described herein are a voluntary policy, custom, and/or practice of Oakland, Southfield, and/or their final policymaker(s).

70. This voluntary policy and/or practice of Oakland and Southfield is sufficient to impose damages and other relief pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), and its progeny.

71. Specifically, Oakland and Southfield made the affirmative, voluntary, and discretionary decision to select and designate the county to act as the FGU. See Mich. Comp. Laws § 211.78(3)-(6).

72. Moreover, Oakland, either through enactment of laws or regulations, official agency or governmental entity policy, and/or actions taken by an official or officials with final decision-making authority, has administered Oakland's foreclosure and auction process generally, including Mich. Comp. Laws § 211.78m(8), so that after Oakland sells a parcel at auction, it retains the entire amount of the proceeds, even if the proceeds exceed the amount of the Tax

Delinquency, and never turns anything to the property owner, nor provides any mechanism by which the property owner can secure a return of his, her, or its Equity.

73.     Further, Southfield, either through enactment of laws and regulations, official agency or governmental entity policy, and/or actions taken by an official or officials with final decision-making authority, administered Southfield's right of first refusal program, so that Southfield and its affiliated Defendants were able to obtain tax-delinquent properties from Oakland at an amount below fair-market value, sell the properties through SNRI, and obtain the Surplus Equity that should belong to the property owner, without providing any mechanism by which the property owner can secure a return of his, her or its Surplus Equity.

74.     Accordingly, the actions at issue here were undertaken pursuant to an official county policy for purposes of *Monell*.

75.     The GPTA, and specifically Mich. Comp. Laws §§ 211.78m(8) and t(2), did not require the practices of which Plaintiffs complain. Rather, the GPTA can be fairly read to provide for equity to be returned to the previous owner of a foreclosed property before the resulting funds are allocated.

76.     Oakland's and Southfield's conduct as set forth herein violates the United States and Michigan Constitutions.

-20-

77.     The actions of Oakland and Southfield were orchestrated to cause harm intentionally or wantonly to Plaintiffs due to the utter disregard and intentional indifference of Plaintiffs' constitutionally protected rights.

78.     On December 23, 2020, Michigan enacted an amendatory act which was meant to be curative of the unconstitutional former sections of the GTPA which purpose was to provide Plaintiffs with "just compensation" equivalent to fair market value. However, despite all the changes in legislative and decisional law and the so-called curative amendments to GPTA, Plaintiffs presently have no adequate remedy or procedure to receive "just compensation" under Michigan law except as stated in this lawsuit. *Jackson v. Southfield Neighborhood Revitalization Initiative,* No. 166320, 2025 Mich. LEXIS 1287 (July 16, 2025). Therefore, the Plaintiffs look to this Court to provide a remedy under the U.S. Constitution, federal law and Michigan law and other applicable law to provide such "just compensation" and make Plaintiffs whole with other appropriate damages.

**SPECIFIC ALLEGATIONS RELATING TO THE PARCELS**

79.     Plaintiffs owned certain property ("Property") in Oakland County, Michigan.

80.     The Plaintiffs seek to recover their Surplus Equity in their respective Property after Defendants' foreclosure and sale of the Property to pay delinquent real estate taxes owed by the Plaintiffs by virtue of their ownership of the Property.

81.    After Plaintiffs fell behind on their property taxes for their respective residences, Oakland, through its Treasurer, initiated forfeiture, and foreclosure proceedings from March 31, 2015, through the fall of 2020 against the properties formerly owned by Plaintiffs.

82.    As a result of the GPTA procedure, the Judgments of Foreclosure were recorded at various times against Plaintiffs which after expiration of the redemption period vested title solely and absolutely in Oakland and its treasurer.

83.    Plaintiff Carl Wilkinson with Power of Attorney for Irvin Wilkinson owned property and owed approximately $3,808.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-34-452-003, commonly known as Westover Avenue, Southfield, Michigan 48075.

84.    Plaintiff John McGill owned property and owed approximately $7,565.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-13-234-001, commonly known as 28590 Marshall Street, Southfield, Michigan 48075.

85.    Plaintiff Ronda Gray owned property and owed approximately $10,429.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-35-328-039, commonly known as 19026 Melrose Ave., Southfield, Michigan 48075.

86.    Plaintiff Lhisa Warsaw owned property and owed approximately $17,934.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-15-228-043, commonly known as 20426 Lacrosse Ave., Southfield, Michigan 48075.

87.    Plaintiff Jonathan M. Ellison owned property and owed approximately $1,655.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-26-301-030, commonly known as Lee Baker Drive, Southfield, Michigan 48075.

88.    Plaintiff Heywood Ballard owned property and owed approximately $1,141.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-34-102-001, commonly known as Lahser Road, Southfield, Michigan 48075.

89.    Plaintiff Reyford Frye and Mario Moreno owned property and owed approximately $9,789.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-23-376-011, commonly known as 19470 Goldwin Street, Southfield, Michigan 48075.

90.    Plaintiff Carolyn Richardson-Heart owned property and owed approximately $20,188.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-28-252-003, commonly known as 24210 Mulberry Drive, Southfield, Michigan 48075.

91.    Plaintiff Marvin Asker, individually and as Personal Representative for the Estate of Georgette Kory, owned property and owed approximately $11,271.00

in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-13-233-005, commonly known as 28538 Fairfax Street, Southfield, Michigan 48075.

92. Plaintiff Christopher Boyd owned property and owed approximately $1.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-34-277-002, commonly known as Woodburn Drive, Southfield, Michigan 48075.

93. Plaintiff Wendy Wright owned property and owed approximately $1.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-34-177-003, commonly known as 21271 Mada Avenue, Southfield, Michigan 48075.

94. Plaintiff Keycia Wright owned property and owed approximately $27,697.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-34-402-027, commonly known as 20500 Melrose Street, Southfield, Michigan 48075.

95. Plaintiff Camilla Bowman-Porter owned property and owed approximately $12,015.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-34-302-011, commonly known as 21749 8 ½ Mile Road, Southfield, Michigan 48075.

96. Plaintiff Brandon Kleckley owned property and owed approximately $27,605.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-34-455-027, commonly known as 20511 Westhampton Ave., Southfield, Michigan 48075.

97. Plaintiff Reginald Collins owned property and owed approximately $16,656.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-36-152-019, commonly known as 17540 Roxbury Ave., Southfield, Michigan 48075.

98. Plaintiff Simply Construction Excavating, by Lamar Grace, owned property and owed approximately $14,447.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-35-351-028, commonly known as 20905 Maple ridge Ave., Southfield, Michigan 48075.

99. Plaintiff Demetria Davis owned property and owed approximately $13,741.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-35-428-002, commonly known as 18435 Dorset Street, Southfield, Michigan 48075.

100. Plaintiff Allysa Hayes owned property and owed approximately $9,788.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-34-453-019, commonly known as 20506 Westhampton Ave., Southfield, Michigan 48075.

101. Plaintiff Silver Capital Group, by Howard Sterling, owned property and owed approximately $105,975.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-34-401-005, commonly known as 20860 Secluded Lane, Southfield, Michigan 48075.

102.   Plaintiff Sheila Maxwell owned property and owed approximately $19,740.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-15-303-013, commonly known as 27645 Dover Street, Southfield, Michigan 48075.

103.   Plaintiff Bobby Williamson, as Personal Representative of the Estate of Alma Williamson owned property and owed approximately $26,294.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-25-476-275, commonly known as 23212 Grayson Drive, Southfield, Michigan 48075.

104.   Plaintiff Della Hagwood owned property and owed approximately $5,050.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-35-103-007, commonly known as Mahon Street, Southfield, Michigan 48075.

105.   Plaintiff Dr. Fesseha Tewodros owned property and owed approximately $6,461.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-19-301-017, commonly known as Ormond Road, Southfield, Michigan 48075.

106.   Plaintiff EAH Property Management LLC, by Everett Hodge owned property and owed approximately $5,855.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-32-376-087, commonly known as 25360 Shiawassee, CIR 201, Southfield, Michigan 48033.

107. Plaintiff Roland Porter owned property and owed approximately $12,015.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-34-302-011, commonly known as 21749 8 ½ Mile Road, Southfield, Michigan 48075.

108. Plaintiff James and Fredericka Holley owned property and owed approximately $31,000.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-35-176-022, commonly known as 19246 Greenwald, Southfield, Michigan 48075.

109. Plaintiff Keycia Pope as Personal Representative of the Estate of Serenus Pope owned property and owed approximately $13,044.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-36-154-018, commonly known as 17512 Cornell, Southfield, Michigan 48075.

110. Plaintiff Anthony Mottley owned property and owed approximately $13,556.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-27-101-018, commonly known as 24903 Lois Lane, Southfield, Michigan 48075.

111. Plaintiff Adenblke Ijlwaye owned property and owed approximately $41,500.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-25-331-002, commonly known as 17299 Bonstelle, Southfield, Michigan 48075.

112. Plaintiff Renee Hassan owned property and owed approximately $17,860.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID:

24-13-383-017, commonly known as 27120 Shagbark Drive, Southfield, Michigan 48075.

113.   Plaintiff Sarah DeLeon owned property and owed approximately $3,189.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-34-277-011, commonly known as 20119 Woodburn Drive, Southfield, Michigan 48075.

114.   Plaintiff Michael Graves owned property and owed approximately $24,393.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-13-130-051, commonly known as 28429 Stuart Drive, Southfield, Michigan 48075.

115.   Plaintiff David McElmurry owned property and owed approximately $4,710.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-31-451-045, commonly known as 20816 Delaware, Southfield, Michigan 48075.

116.   Plaintiff SFS Tax Services by Curtis Henderson owned property and owed approximately $5,789.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-31-227-016, commonly known as 28590 Marshall Street, Southfield, Michigan 48075.

117.   Plaintiff Sodore, LLC by Tewodros Fessdeha, owned property and owed approximately $120,318.00 in delinquent property taxes, interest, penalties, and fees on Parcel ID: 24-25-281-042, commonly known as 24011 Greenfield Road,

Southfield, Michigan 48075.

118. At the time of the foreclosure there were no other known liens that encumbered the Property.

119. At the time that the afore-described foreclosures were effective each parcel that was previously owned by the Plaintiffs had a fair market value which was significantly in excess of the "minimum bid" and/or foreclosure amount; the amount in excess was between 11 to 39 times in excess of the price paid by Southfield or Oakland.

120. The parcel Id, Address, date of Judgment of Foreclosure, Right of Refusal purchase amount and fair market value of each property is listed in **Exhibit A**, which is incorporated by reference.

121. Oakland was the FGU in all the Property's tax foreclosure proceedings.

122. All the above-described parcels were conveyed by Oakland by Quit Claim Deed for the minimum bid or less (**Exhibit A**).

123. At the time of the entry of the Judgment of Foreclosure there was not any constitutionally sufficient notice or procedure pre- or post-deprivation provided to the landowners or their legal successors nor was there any remedy that existed.

124. At the present time there is still no constitutionally sufficient remedy or procedure that exists for landowners that have had their properties taken in violation of Article 10 § 2 the Michigan Constitution.

125. By virtue of entering Judgments of Foreclosure, Defendants seized ownership of the Property, transferring the Property to Oakland for the delinquent taxes.

126. Before that event, Plaintiffs held legal and equitable title in the Property; after that event, Plaintiffs held no title to the Property at all. *Hall v. Meisner, et al.*, 51 F. 4th 185, 196 (CA 6, 2022).

127. Defendants wrongfully took Plaintiffs' Surplus Equity in the Property when it transferred Plaintiffs' Property to the new owners.

128. Defendants have refused to return any Surplus Equity to Plaintiffs.

129. The statute of limitations was tolled because of prior class actions filed concerning the unconstitutional property tax foreclosure, and covid tolling that relates to these Plaintiffs, and others similarly situated persons.

**COUNT I**
**IMPROPER TAKING WITHOUT JUST COMPENSATION**
**IN VIOLATION OF FIFTH AND FOURTEENTH AMENDMENTS**
**42 USC §§ 1983 AND 1988**

130. Plaintiffs repeat, reallege, and incorporate herein by reference all prior paragraphs.

131. These claims for improper taking without just compensation in violation of the Fifth and Fourteenth Amendments of the United State Constitution are being made against all Defendants pursuant to 42 U.S.C. §§ 1983 and 1988.

132. The Fifth Amendment, made applicable to the states via the Fourteenth Amendment, is a constitutional provision and right requiring the payment of just compensation upon a taking by Defendant.

133. Defendants, in violation of 42 U.S.C. §§ 1983 and 1988, have taken Plaintiffs' property interests in the form of Surplus Equity and have appropriated this property for public use without the payment of just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

134. Defendants have refused to take any action for the payments of just compensation for their seizures of Surplus Equity from the Plaintiffs.

135. By their refusal to take any action for the payment of just compensation at the time of the taking, Defendants have deprived Plaintiffs of their constitutional right to just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution pursuant to 42 USC § 1983 and § 1988.

136. Defendants have not paid just compensation.

137. Defendants' actions were designed to cause harm intentionally or wantonly to Plaintiffs due to the utter disregard of Plaintiffs' constitutionally protected rights.

138. Plaintiffs have been injured and have suffered damages.

## COUNT II
## INVERSE CONDEMNATION
## VIOLATION OF THE MICHIGAN CONSTITUTION,
## ARTICLE X, SECTION 2

139.   Plaintiffs repeat, reallege, and incorporate herein by reference all prior paragraphs.

140.   Defendants have taken Plaintiffs' property interests in the form of Surplus Equity and have appropriated this property for public use without the payment of just compensation.

141.   Defendants have done so without using any direct condemnation process, including those outlined under the Uniform Condemnation Procedures Act, Mich. Comp. Laws § 213.51, et seq., and in violation of Article X, Section 2 of the Michigan Constitution.

142.   Defendants' actions caused an unjust taking of Plaintiffs entire Surplus Equity in their Property.

143.   Defendants have not and will not provide Plaintiffs with any opportunity to claim their Surplus Equity after the seizure and/or later sale of their Property, nor do Defendants provide or have a process to claim compensation at the time the Defendants seized title to their Property.

144.   Defendants have not paid just compensation.

145.   Defendants' actions were designed to cause harm intentionally or wantonly to Plaintiffs due to the utter disregard of Plaintiffs' constitutionally protected rights.

146.   Those Plaintiffs whose Surplus Equity was taken are entitled to compensation under Article X, Section 2 of the Michigan Constitution.

147.   Plaintiffs have been injured and have suffered damages.

148.   Andy Meisner through an attorney set up a payment plan with Sheila Maxwell where she made a down payment and was told she would make monthly payments to ensure she kept her house. A few days after this meeting, a man came into her house unannounced and told Sheila Maxwell he was the city. Sheila called the city and was told no person had been sent to the home. When the monthly payment was due, she was told she was late and her Property had already been foreclosed. She was then told she could buy the house back at auction; however, when that date came the city of Southfield had already taken the home. She never received any Surplus Equity from her foreclosed home.

**COUNT III**
**UNJUST ENRICHMENT**
**(AGAINST DEFENDANTS OTHER THAN OAKLAND COUNTY)**

149.   Plaintiffs repeat, re-allege, and incorporate herein by reference all prior paragraphs.

-33-

150. Defendants have taken Plaintiffs' property interests in the form of Surplus Equity.

151. Oakland was mandated to transfer properties by right of first refusal to the lesser governmental agencies.

152. Defendants realized monetary gain from acquiring Plaintiffs' Property for substantially less than fair market value consisting of Plaintiffs' Surplus Equity.

153. Defendants have been unjustly enriched by retaining the Plaintiffs' Surplus Equity or by the subsequent sale.

154. Defendants other than Oakland have liability in the right of first refusal context as the last public entity that unjustly benefited or enriched themselves from Plaintiffs' tax foreclosed properties.

155. Defendants were unjustly enriched with the Surplus Equity to which Plaintiffs were entitled.

156. As a direct and proximate cause of the Defendants' retention of Plaintiffs' Surplus Equity, Plaintiffs have been damaged and continue to suffer damages in an amount to be determined, in addition to costs, expenses, and attorneys' fees.

## COUNT IV
## VIOLATION OF PROCEDURAL DUE PROCESS
## 42 USC § 1983 AND § 1988
## (AGAINST OAKLAND)

157.  Plaintiffs repeat, reallege, and incorporate herein by reference all prior paragraphs.

158.  The Fourteenth Amendment guarantees procedural due process to Plaintiffs.

159.  Plaintiffs have a constitutionally protected property interest in the Surplus Equity of their respective Property.

160.  Defendants have denied Plaintiffs these rights by failing to provide for any procedure at all for Plaintiffs to secure the return of their Surplus Equity after their Property's sale or transfer.

161.  As a direct and proximate result of the Defendants' failure to provide adequate procedural due process, Plaintiffs have been injured and have suffered damages.

162.   Plaintiffs do not have an adequate remedy at law except as set forth in this Complaint.

## COUNT V
## UNJUST ENRICHMENT
## (AGAINST SOUTHFIELD, SNHPC AND SNRI)

163.  Plaintiffs repeat, reallege, and incorporate herein by reference all prior paragraphs.

164. Defendants denoted above have received the benefit of substantial Plaintiffs' Surplus Equity.

165. City of Southfield, SNPHC and SNRI were all acting under color of state law when they transferred Plaintiffs' Surplus Equity.

166. Southfield, SNPHC and SNRI received more than what was owed. See *Jackson v. SNRI, supra.* (Concurrence J. Welch, July 16 ,2025).

167. Southfield, SNRI through Zorn and Siver misled Plaintiffs in believing that they could retain their property rights.

168. Southfield, SNRI and SNPHC all planned in concert and requested that the Plaintiffs' property rights be transferred from Oakland County for Southfields' SNRI 's and SNHCP's benefit.

169. Defendant only obtained these properties for $1.00 because Southfield exercised a statutory right of refusal and allowed Defendant to avoid an auction to acquire these properties, which Defendants would have paid significantly more for at auction. Defendant SNRI paid $1.00 for property and then sold it at or near fair market value.

170. Defendant SNRI then sold it at or near fair market value.

171. Under these circumstances, it would be inequitable for Southfield, SNPHC, and SNRI to retain the equity they received from Plaintiffs through the implied contracts between the homeowners and Oakland County.

**COUNT V**
**CIVIL CONSPIRACY**
**42 USC § 1983**
**(ALL DEFENDANTS)**

172. Plaintiffs repeat, reallege, and incorporate herein by reference all prior paragraphs.

173. The GPTA granted Southfield the first right of refusal to purchase Plaintiffs' tax-foreclosed properties.

174. In June of 2016, SNPHC formed SNRI to purchase, rehabilitate and sell foreclosed properties to private purchasers.

174. At all times relevant, Zorn was an officer of SNPHC, the managing member of SNRI, and the Southfield City Administrator.

175. At all times relevant, Siver was the president of SNPHC and the Mayor of Southfield.

176. A civil conspiracy under 42 U.S.C. § 1983 is an agreement between two or more persons to injure another through unlawful conduct.

177. Defendants Meisner, Zorn and Siver, acting in their official and personal capacities both governmentally and as Board members of private entities developed a single plan that shared a conspiratorial objective to deprive the Plaintiffs of their constitutional rights.

-37-

178.   Defendants took overt actions that deprived Plaintiffs of "due process" and their property rights under the United States and Michigan Constitutions.

179.   Following the statutory tax-foreclosure date of March 31, a list of tax-foreclosed properties is generated and distributed by Oakland.

180.   SNPHC obtained and reviewed these lists to determine which properties to purchase.

181.   SNPHC convinced Southfield to utilize its statutory first right of refusal for those properties desired by SNPHC and pay the minimum bid. Otherwise, SNPHC would have to obtain those properties at auction, which would likely cost more than the minimum bid. After the recent amendment to the GPTA, SNPHC would have to pay the greater of the minimum bid or the fair market value.

182.   SNPHC and SNRI agreed to provide Southfield with the funds to allow Southfield to exercise its right of first refusal. Additionally, SNRI agreed to pay any outstanding summer and winter taxes and other related tax charges.

183.   After Southfield purchased the properties and obtained title from Oakland, Southfield transferred title of those same properties to SNRI for $1.00.

184.   SNRI would then and sell those homes for fair-market value, reaping a significant profit which includes Plaintiffs' Surplus Equity.

185. Zorn and Siver used their positions as Mayor and City Administrator of Southfield in furtherance of this scheme, from which they benefitted personally and professionally.

186. As set forth above, SNPHC and SNRI conspired with Southfield to act under color of law to obtain Plaintiff's Surplus Equity.

187. The exercise of Southfield's right of first refusal to obtain Plaintiff's Surplus Equity was the product of a corrupt conspiracy.

188. Any alleged "public purpose" from Southfield, SNPHC and SNRI is pretextual to the real purpose– personal profit.

189. As set forth above, the conduct of Southfield, SNPHC, SNRI, Zorn and Siver caused the deprivation of the Plaintiff's right to their Surplus Equity.

190. Plaintiff's rights to their Surplus Equity are well established.

191. As a direct and proximate result, Plaintiffs have been injured and have suffered damages.

192. In *Jackson, supra*, the Michigan Supreme Court indicated that the prior causation rationale used to dismiss certain defendants from the civil conspiracy claim no longer controls, because the law regarding municipal-actor liability was not settled and the concurrence supports municipal liability.

193. In *Sinclair v. Meisner*, Case No. 22-164, the United States Court of Appeals for the Sixth Circuit reversed the dismissal of a civil conspiracy claim on

December 29, 2022; certiorari was denied on October 3, 2023. The U.S. District Court later dismissed the claim for lack of causation, reasoning under *Hall v. Meisner* that only Oakland could be liable. Under *Jackson*, however, that assumption is no longer correct.

194.    Andrew Meisner exchanged extensive information and intentionally precipitated foreclosures and premature transfers of property with all the other Defendants to facilitate the violation of Plaintiffs' constitutional rights and unlawful stripping of equity.

195.    Plaintiffs have no adequate remedy at law other than the relief sought in this Complaint.

**COUNT VI**
**VIOLATION OF PROCEDURAL DUE PROCESS UNDER THE MICHIGAN CONSTITUTION**
**(AGAINST OAKLAND COUNTY AND CITY OF SOUTHFIELD)**

196.    Plaintiffs repeat, re-allege, and incorporate herein by reference all prior paragraphs.

197.    Article I, Section 17 of the Michigan Constitution guarantees procedural due process to Plaintiffs.

198.    Plaintiffs have a constitutionally protected property interest in the Surplus Equity of their respective Property. Plaintiffs' Constitutional right of not having their Property taken without just compensation is a self-executing right stemming from the Michigan Constitution.

-40-

199. Under the previous and current versions of the GPTA, Plaintiffs did not have any process, right or procedure to secure the return of their Surplus Equity after their Property transferred or sold.

200. There were clear and consistent patterns of procedural due process, which were intentional and only directed to facilitate the unconstitutional execution of the then-existing minimum bid "right of first refusal."

201. Former Oakland County Treasurer Andrew Meisner in his individual capacity had personal involvement in the due process violations that harmed the Plaintiffs.

202. Former Oakland County Treasurer in his individual capacity ratified illegal conduct not abiding by foreclosure protocol established by the GPTA.

203. Specifically, Meisner told Plaintiffs they could keep their Property if they made a substantial post-foreclosure payment followed by monthly payments.

204. Meisner took the Plaintiffs' respective downpayments in March of the foreclosure year (often days before the March 31st redemption deadline) and then told the Plaintiffs the agreement was cancelled and arranged for the transfer to Southfield.

205. There was deliberate interference with the finalization of the foreclosures which was a direct causal link to the loss of the Plaintiffs' Surplus Equity.

206. Defendant Oakland County and its Treasurer in his personal capacity did not have any consistent policy on when to obtain a foreclosure judgment.

207. Defendant Oakland County and its Treasurer in his personal capacity exceeded his authority by not following the GPTA, as enacted by the legislature.

208. Defendant Andrew Meisner's ad hoc determination of "substantial hardship" in effect created a situation where there was no certitude as to when a parcel of property would be foreclosed, which creates a constitutional violation of procedural due process. There was no written and /or publicly policy available on when and how to withhold properties from foreclosure as required by the GPTA.

209. Defendants, in many instances prematurely, foreclosed as the property was still in the forfeiture phase or upon the Treasurer's subjective enforcement to direct properties to lesser governmental communities so that they would be unjustly enriched by the transfers, including Oak Park, in which Meisner's mother was mayor.

210. Defendants did not properly administer the GPTA which provided a remedy for property owners to receive "just compensation."

211. Defendant Treasurer Andrew Meisner's conduct in his individual capacity constituted deliberate indifference to Plaintiffs' fundamental constitutional rights.

-42-

212. Defendants did not give constitutionally sufficient notice to Plaintiffs, either pre-foreclosure or post foreclosure, of the deprivation of Plaintiffs' Property in violation of the Michigan Constitution.

213. GPTA is unconstitutional based on the above recited principles.

214. Oakland has denied Plaintiffs their rights by failing to provide any constitutionally reasonable or adequate procedure for Plaintiffs to secure the return of their Surplus Equity after their Property's sale or transfer.

215. Defendants knew that their conduct was intentional and motivated by evil motive and intent, or it involved callous indifference or recklessness to the Plaintiffs' constitutionally protected rights.

216. Defendant Andrew Meisner with personal knowledge canceled payment arrangements, changed foreclosure dates, facilitated the lesser governmental entities execution of the rights of first refusal to divert Surplus Equity.

217. Defendant Zorn coordinated a scheme to deprive Plaintiffs of their property rights and provided no remedy for Plaintiffs to retain their Surplus Equity or personal property.

218. Defendant Siver participated and abused his positions both as a city official and Board member of the non-profit to deprive Plaintiffs of their property rights and provided no remedy for Plaintiffs to retain their Surplus Equity or personal property.

219.  Defendants Meisner, Zorn and Siver knew that the law did not permit such conduct.

220.  As a direct and proximate result of Defendants' failure to provide adequate procedural due process, Plaintiffs have been injured and have suffered damages which include full compensatory damages, disgorgement of the equity, punitive damages, damages for emotional distress as to residential properties and interest at a rate to make them whole for the delay in paying just compensation and the payment of Plaintiffs' attorney fees.

221.  Plaintiffs do not have an adequate remedy at law except as set forth in this Complaint.

## RELIEF REQUESTED

Wherefore, Plaintiffs respectfully request that this Court:

a.  Enter an order declaring the conduct of Defendants as unconstitutional under the United States and Michigan Constitutions;

b.  Enter an order for an award of full compensatory damages for those injuries and damages sustained by Plaintiffs, including disgorgement of Equity for each respective property;

c.  Enter an order for additional damages and/or compensation to reach an amount equaling 125% of the property's fair market value if this Court determines that private property consisting of an individual's Equity

was taken for public use pursuant to Article X, Section 2 of the Michigan Constitution.

d.   Enter and order for damages pursuant to 42 U.S.C. §§ 1983 and 1988;

e.   Enter an order for an award of interest as provided for in *Knick v. Twp. of Scott*;

f.   Enter an order for an award of reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, and all other applicable laws, rules, and statutes;

g.   Enter an award for exemplary and punitive damages;

h.   Enter an order for all other such legal and equitable relief that this Court deems proper and just.

## JURY DEMAND

For all triable issues, a jury is hereby demanded.

Respectfully submitted,

/s/Scott F. Smith_____
Scott F. Smith (P28472)
**SMITH LAW GROUP, PLLC**
30833 Northwestern Hwy, Suite 200
Farmington Hills, MI 48334
(248) 626-1962
Counsel for Plaintiffs

EXHIBIT A

EXHIBIT A

| Plantiff | CVT | Parcel ID | Address | Date of Judgement | Tax Due | FMV Value | City |
|---|---|---|---|---|---|---|---|
| Carl Wilkinson Power of Attorney Irvin Wilkinson | 76 | 24-34-452-003 | Westover Ave, Southfield, MI 48075 | 3/31/2017 | $3,808 | $59,520.00 | Southfield |
| John Mcgill | 76 | 24-13-234-001 | 28590 Marshall St  Southfield, MI 48076 | 3/31/2016 | $7,565 | $110,000.00 | Southfield |
| Ronda Gray | 76 | 24-35-328-039 | 19026 Melrose Ave  Southfield, MI 48075 | 3/31/2018 | $10,429 | $55,000.00 | Southfield |
| Lhisa Warsaw | 76 | 24-15-228-043 | 20426 Lacrosse Ave  Southfield, MI 48076 | 3/31/2017 | $17,934 | $184,900.00 | Southfield |
| Jonathan M Ellison | 76 | 24-26-301-030 | Lee Baker Dr, Southfield, MI 48075 | 3/31/2017 | $1,655 | $29,700.00 | Southfield |
| Heywood Ballard | 76 | 24-34-102-001 | Lahser Rd, Southfield, MI 48075 | 3/31/2016 | $1,141.00 | $88,452.00 | Southfield |
| Reyford Frye | 76 | 24-23-376-011 | 19470 Goldwin St, Southfield, MI 48075 | 3/31/2017 | $9,789.00 | $88,857.00 | Southfield |
| Mario Moreno | 76 | 24-23-376-011 | 19470 Goldwin St, Southfield, MI 48075 | 3/31/2017 | $9,789.00 | $88,857.00 | Southfield |
| Carolyn Richardson-Heart | 76 | 24-28-252-003 | 24210 Mulberry Dr, Southfield, MI 48033 | 3/31/2018 | $20,188.00 | $300,000.00 | Southfield |
| Marvin Asker | 76 | 24-13-233-005 | 28538 Fairfax St Southfield, MI 48076 | 3/31/2019 | $11,271.00 | $102,843.00 | Southfield |
| Marvin Asker  Personal Representative for the Estate of Georgette Kory | 76 | 24-13-233-005 | 28538 Fairfax St Southfield, MI 48076 | 3/31/2019 | $11,271.00 | $102,843.00 | Southfield |
| Christopher Boyd | 76 | 24-34-277-002 | Woodburn Dr, Southfield, MI 48075 | 3/31/2012 | $1.00 | $36,855.00 | Southfield |
| Wendy Wright | 76 | 24-34-177-003 | 21271 Mada Ave, Southfield, MI 48075 | 3/31/2012 | $1.00 | $77,895.00 | Southfield |
| Keycia Wright | 76 | 24-34-402-027 | 20500 Melrose St, Southfield, MI 48750 | 3/31/2018 | $27,697.00 | $85,000.00 | Southfield |
| Camilla Bowman-Porter | 76 | 24-34-302-011 | 21749 8 1/2 Mile Rd  Southfield, MI 48075 | 3/31/2017 | $12,015.00 | $74,844.00 | Southfield |
| Brandon Kleckley | 76 | 24-34-455-027 | 20511 Westhampton Ave, Southfield, MI 48075 | 3/31/2017 | $27,605.00 | $78,786.00 | Southfield |
| Reginald Collins | 76 | 24-36-152-019 | 17540 Roxbury Ave, Southfield, MI 48075 | 3/31/2016 | $16,656.00 | $135,000.00 | Southfield |
| Simply Construction Excavating | 76 | 24-35-351-028 | 20905 Mapleridge Ave, Southfield, MI 48075 | 3/31/2017 | $14,447.00 | $184,545.00 | Southfield |
| Demetria Davis | 76 | 24-35-428-002 | 18435 Dorset St, Southfield, MI 48075 | 3/31/2017 | $13,741.00 | $135,108.00 | Southfield |
| Allysa Hayes | 76 | 24-34-453-019 | 20506 Westhampton Ave, Southfield, MI 48075 | 3/31/2019 | $9,788.00 | $103,005.00 | Southfield |
| Silver Capital Group | 76 | 24-34-401-005 | 20860 Secluded Ln,  Southfield, MI 48075 | 3/31/2018 | $24,157.00 | $105,975.00 | Southfield |
| Sheila Maxwell | 76 | 24-15-303-013 | 27645 Dover St, Southfield, MI 48076 | 3/31/2018 | $19,740.00 | $210,168.00 | Southfield |
| Bobby Williamson Personal Representative for the Estate of Alma Williamson | 76 | 24-25-476-275 | 23212 Grayson Dr, Southfield, MI 48075 | 3/31/2016 | $26,294.00 | $92,016.00 | Southfield |
| Della Hagwood | 76 | 24-35-103-007 | Mahon St, Southfield, MI 48075 | 3/31/2015 | $5,050.00 | $13,635.00 | Southfield |
| Dr. Fesseha Tewodros | 76 | 24-19-301-017 | Ormond Dr,  Southfield, MI 48033 | 3/31/2018 | $6,461.00 | $64,773.00 | Southfield |
| EAH Property Management LLC | 76 | 24-32-376-081 | 25360 Shiawassee CIR 201, Southfield, MI 48033 | 3/31/2017 | $5,454.00 | $46,440.00 | Southfield |
| Roland Porter | 76 | 24-34-302-011 | 21749 8 1/2 Mile Rd Southfield, MI 48075 | 3/31/2017 | $12,015.00 | $66,000.00 | Southfield |
| James and Fredericka Holley | 76 | 24-35-176-022 | 19246 Greenwald, Southfield, MI 48075 | 3/31/2017 | $31,000.00 | $140,000.00 | Southfield |
| Keycia Pope Personal Representative For The Estate Of Serenus Pope | 76 | 24-36-154-018 | 17512 Cornell,Southfield, MI 48075 | 3/31/2017 | $13,044.00 | $122,000.00 | Southfield |
| Anthony Mottley | 76 | 24-27-101-018 | 24903 Lois Lane,Southfield, MI 48075 | 3/31/2017 | $13,556.00 | $171,585.00 | Southfield |
| Adenlke Ijlwaye | 76 | 24-25-331-002 | 17299 Bonstelle, Southfield, MI 48075 | 3/31/2016 | $41,500.00 | $150,000.00 | Southfield |
| Renee Hassan | 76 | 24-13-383-017 | 27120 Shagbark Drive, Southfield, MI 48076 | 3/31/2018 | $17,860.00 | $118,000.00 | Southfield |
| Sarah DeLeon | 76 | 24-34-277-011 | 20119 Woodburn Dr, Southfield, MI 48075 | 3/31/2016 | $3,158.00 | $55,000.00 | Southfield |
| Michael Graves | 76 | 24-13-130-051 | 28429 Stuart Drive, Southfield, MI 48076 | 3/31/2016 | $24,393.00 | $94,000.00 | Southfield |
| David McElmurry | 76 | 24-31-451-045 | 20816 Delaware, Southfield, MI 48033 | 3/31/2016 | $4,710.00 | $45,000.00 | Southfield |
| SFS Tax Svc | 76 | 24-31-227-016 | 22505 Beech Rd, Southfield, MI 48033 | 3/31/2017 | $5,789.00 | $58,000.00 | Southfield |
| Sodore LLC | 76 | 24-25-281-042 | 24011 Greenfield Rd, Southfield, MI 48075 | 3/31/2019 | $120,318.00 | $429,597.00 | Southfield |